## Douglas A. Nash v. Michael Coxon, Superintendent, Windsor Correctional Facility

[583 A.2d 96]

No. 88-115

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ.**

Opinion Filed October 19, 1990

*Michael Rose*, St. Albans, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Thomas J. Rushford*, Assistant Attorney General, Waterbury, for Defendant-Appellee.

**Gibson, J.** Plaintiff, an inmate at the Windsor Correctional Facility, appeals from a trial court decision affirming a denial by the Department of Corrections of plaintiff's request to pay the cost of a correspondence course in paralegal education. We affirm.

In February 1987, plaintiff requested that the Department of Corrections assist him in pursuing the course, and late in that month defendant Michael Coxon, the superintendent at the Windsor Correctional Facility, denied the request. Plaintiff subsequently filed a grievance with the Commissioner of Corrections, who upheld defendant Coxon's decision. After making additional requests for similar help in August 1987, plaintiff filed the instant petition for review of governmental action in the Windsor Superior Court; after the filing, defendant Coxon once more advised plaintiff that he could not approve the request.

The trial court found that plaintiff had not enrolled in courses offered by the Windsor Correctional Facility, but had "participated in creative writing" at the facility. The court found that plaintiff did not enroll in the facility's psychology course because he believed that his own independent studies in that field placed him beyond the level of the course. The court considered and rejected plaintiff's argument that he was denied funding for the correspondence course because of other legal actions he had undertaken through the court system.

The court made findings on the educational opportunities at Windsor. It found that the Department offered courses of study that met the requirements of 28 V.S.A. § 1(b),[1] and that defendant Coxon and the Department had "made available to the plaintiff industrial arts and college-level courses." The court specifically found:

Although the plaintiff has obtained a GED and has improved his spelling, he has not used the industrial arts

[1] 28 V.S.A. § 1(b) states in relevant part:

The department shall formulate its programs and policies recognizing that almost all criminal offenders ultimately return to the community, and that the traditional institutional prisons fail to reform or rehabilitate, operating instead to increase the risk of continued criminal acts following release.

Though not cited by the trial court, 28 V.S.A. § 102(c) states in relevant part:

The commissioner [of corrections] is charged with the following responsibilities:

. . . .

(4) To establish facilities and develop programs to provide inmates at correctional facilities with such educational and vocational training deemed to be appropriate to the treatment of the inmates; . . . .

courses that are available nor has he attended the college-level courses that have been made available to inmates.

The court found that defendant had acted within his discretion in denying plaintiff's request. The present appeal followed.

Plaintiff concedes that "[b]road discretion must be granted to correctional authorities to determine what mode of treatment will best serve the individual inmate." *Wetmore v. Smith*, 130 Vt. 618, 623, 298 A.2d 567, 570 (1972). Plaintiff seizes on the phrase "individual inmate" and concludes that the educational programs offered "must bear a relationship to the individual needs of the inmates," citing *Cooper v. Gwinn*, 298 S.E.2d 781, 790 (W. Va. 1981).

Plaintiff confuses the responsibility of the Department to treat inmates in accordance with individual needs with the right of an individual inmate to demand any treatment the inmate believes is appropriate. The point of *Wetmore* is that the Department has broad discretion to decide what is most effective for inmates, who may complain only if they can demonstrate that such discretion has been abused. What we said of a quasi-judicial board in *Vincent v. Vermont State Retirement Board*, 148 Vt. 531, 536, 536 A.2d 925, 929 (1987), applies to the Department's response in the present case:

> This Court will not interfere with the decision of an administrative board made in the performance of a discretionary duty in the absence of a showing of abuse of discretion resulting in prejudice to one of the parties.

No such abuse of discretion has been shown. In *Cooper v. Gwinn*, the programs available at the West Virginia correctional facility came close to a total denial of educational opportunities to the inmates. The court in that case concluded

> that a real and substantial effort to implement appropriate rehabilitative programs is not currently being pursued at the West Virginia State Prison for Women at Pence Springs. There is no ongoing vocational training program. Department of Corrections officials have not applied to the State Department of Education for available vocational education grants. Access to college courses is not afforded to inmates at the present time. There is no meaningful work release or job apprenticeship program. The few attempts

that have been made in these areas are so limited in scope that it cannot honestly be said that they bear a rational relationship to the rehabilitative purpose of our corrections system.

*Cooper,* 298 S.E.2d at 791.

The trial court in the present case found that the opportunities at the Windsor facility were substantial, although plaintiff had not fully taken advantage of them, and that the denial of plaintiff's petition was not based solely on claims of economics.

There is a considerable difference between a facility with virtually no educational or rehabilitative programs, as in *Cooper,* and one that has a reasonable selection of such programs but declines to expend funds to add new options requested by specific inmates.

Beyond arguing abuse of discretion in declining to fund plaintiff's chosen course of study, plaintiff asserts as a general proposition that the Department must "address the individual educational needs of each and every one of its inmates." We agree that the Department should examine the needs of every inmate as an individual.[2] But it is another matter to assert that the Department may properly address those needs only by agreeing to what the inmate perceives to be appropriate. As the New Hampshire Supreme Court said in an analogous case:

> Were we to recognize a right on the part of inmates to a particular rehabilitative program or permit judges to devise individualized plans for rehabilitation, the already difficult task of sentencing would become unmanageable. Removed from the actual operation of the prison and lacking experience in correctional and rehabilitative methodologies, the judiciary is ill-suited to assume the responsibilities of prison administration. Moreover, an *ad hoc* approach to the assignment of rehabilitative or educational opportunities would require disproportionate allocation of

---

[2] The Department's "Policy and Operating Procedures," issued February 5, 1982 and annexed to the State's brief, states that:

[e]ach offender enrolled in an educational program will have an individualized educational plan. . . . *Based on what is available to each offender,* the instructor will draw up a formal individual learning plan with recommendations for implementation. (Emphasis added.)

limited resources among inmates. At best, this arrangement would simply substitute the judgment of a court for that of the legislature and prison officials, with no guarantee of net benefit.

*State v. Evans*, 127 N.H. 501, 507, 506 A.2d 695, 699 (1985).

*Affirmed.*